DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
LUANN L. SIMMONS (S.B. #203526)
lsimmons@omm.com
DAVID S. ALMELING (S.B. #235449)
dalmeling@omm.com
MARK LIANG (S.B. #278487)
mliang@omm.com
BILL TRAC (S.B. #281437)
btrac@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: +1 415 984 8700

LAURA GORE (*pro hac vice forthcoming*)
lgore@omm.com
AMY ZHAO (*pro hac vice forthcoming*)
amyzhao@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, 17th Floor
New York, New York 10019
Telephone: +1 212 326 2000

*Attorneys for Defendant Google LLC*

*(additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NEVER-SEARCH, INC.,

Plaintiff,

v.

GOOGLE LLC,

Defendant.

Case No. 3:24-cv-03733-RFL

**DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)**

**Date**: December 17, 2024
**Time**: 10:00 am
**Place**: Courtroom 15, 18th Floor
San Francisco Courthouse
**Judge**: Hon. Judge Rita F. Lin

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 17, 2024, at 10:00 am, or as soon thereafter as the matter may be heard, in Courtroom 15 at the United States District Court, 450 Golden Gate Avenue, San Francisco, California 94102, 18th Floor, before the Honorable Judge Rita F. Lin, Defendant Google LLC ("Google") will and hereby does move under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing with prejudice the claims of infringement in the June 21, 2024 Complaint filed by Plaintiff Never-Search, Inc. ("Plaintiff" or "Never-Search") (Dkt. 1).

The claims of U.S. Patent Nos. 7,388,519, 8,219,318, 9,177,330, 9,152,981, 9,599,479, 10,509,810, 11,086,910, and 11,372,903 (Compl., Compl. Exs. 1-8; *see also* Exs. 1-8, respectively[1]) are invalid because they recite patent-ineligible subject matter under 35 U.S.C. § 101. This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings and records on file in this action, and such other written and/or oral argument as may be presented at or before the time this motion is heard by the Court.

## RELIEF SOUGHT

Pursuant to Rule 12(b)(6), Google moves to dismiss with prejudice Never-Search's Complaint on the grounds that the asserted claims are all patent-ineligible under 35 U.S.C. § 101.

Dated: September 23, 2024

O'MELVENY & MYERS LLP

By: */s/ David S. Almeling*
David S. Almeling

*Attorneys for Defendant Google LLC*

[1] The Complaint discusses the Asserted Patents but did not attach them as exhibits. For convenience, the patents are Exhibits 1-8 to the Declaration of David Almeling filed herewith.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. THE ASSERTED PATENTS AND PROCEDURAL HISTORY ..... 1

III. LEGAL STANDARDS ..... 3

IV. ALL CLAIMS ARE INVALID UNDER § 101 ..... 3

A. The Claims of the ’981 and ’910 Patents Are Not Patent-Eligible ..... 4

1. *Alice* Step One: The claims are directed to an abstract idea ..... 4

2. *Alice* Step Two: The claims have no inventive concept ..... 5

B. The Claims of the ’519 Patent Are Not Patent-Eligible ..... 7

1. *Alice* Step One: The claims are directed to an abstract idea ..... 7

2. *Alice* Step Two: The claims have no inventive concept ..... 9

C. The Claims of the ’318, ’330, ’479, and ’810 Patents Are Not Patent-Eligible ..... 9

1. *Alice* Step One: The claims are directed to an abstract idea ..... 9

2. *Alice* Step Two: The claims have no inventive concept ..... 12

D. The Claims of the ’903 Patent Are Not Patent-Eligible ..... 12

1. *Alice* Step One: The claims are directed to an abstract idea ..... 12

2. *Alice* Step Two: The claims have no inventive concept ..... 15

V. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page**

**CASES**


*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) .......... 3, 6, 12

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020) .......... 15

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) .......... 9, 11

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) .......... 5

*Chewy, Inc. v. IBM*,
94 F.4th 1354 (Fed. Cir. 2024) .......... 5, 6, 12, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) .......... 4, 12

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) .......... 5, 11

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) .......... 4

*Eagle View Techs., Inc. v. Roofr, Inc.*,
651 F. Supp. 3d 729 (D. Del. 2023) .......... 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .......... 3, 9, 12

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*,
128 F. Supp. 3d 103 (D.D.C. 2015) .......... 14

*e-Numerate Sols., Inc. v. United States*,
149 Fed. Cl. 563 (2020) .......... 4, 5, 7, 10

*GREE, Inc. v. Supercell Oy*,
855 F. App'x 740 (Fed. Cir. 2021) .......... 14

*Int'l Bus. Mach. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) .......... passim

*Intellectual Ventures I LLC v. Cap. One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017) .......... 9, 15

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) .......... 5, 14

*Intellectual Ventures I, LLC v. Motorola Mobility LLC*,
81 F. Supp. 3d 356 (D. Del. 2015) .......... 11

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) .......... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) .... 4, 5, 7, 10

*Move, Inc. v. Real Estate All. Ltd.*,
721 F. App'x 950 (Fed. Cir. 2018) .... 3, 8

*Never-Search, Inc. v. Apple, Inc.*,
24-cv-3945-RFL .... 2, 3

*Never-Search, Inc. v. Microsoft Corp.*,
No. 24-cv-3950-RFL .... 3

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) .... 13

*Peschke Map Techs. LLC v. Rouse Props. Inc.*,
168 F. Supp. 3d 881 (E.D. Va. 2016) .... 14

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) .... 3

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019) .... 12

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) .... 11

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) .... 13

*WhitServe LLC v. Dropbox, Inc.*,
854 F. App'x 367 (Fed. Cir. 2021) .... 11

*Windy City Innovations, LLC v. Facebook, Inc.*,
411 F. Supp. 3d 886 (N.D. Cal. 2019), *aff'd*, 835 F. App'x 610 (Fed. Cir. 2021) .... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Never-Search's Complaint should be dismissed because all of the asserted patents—U.S. Patent Nos. 7,388,519 ("'519 Patent"), 8,219,318 ("'318 Patent"), 9,177,330 ("'330 Patent"), 9,152,981 ("'981 Patent"), 9,599,479 ("'479 Patent"), 10,509,810 ("'810 Patent"), 11,086,910 ("'910 Patent"), and 11,372,903 ("'903 Patent") (collectively, "Asserted Patents")—are directed to patent-ineligible subject matter under 35 U.S.C. § 101, and are thus invalid.

All eight Asserted Patents claim conventional variations on the long-standing, abstract idea of displaying information about "point of interest" ("POI") locations on a map. All of these ideas could be and were easily implemented in the context of paper maps, demonstrating their abstract nature. And similar ideas relating to computer mapping have been found invalid under § 101 by the Federal Circuit and district courts. Moreover, the Asserted Patents recite these abstract ideas using functional, result-based steps that provide no improvements to computer technology. Instead, the claims merely recite generic computer components operating in their conventional manners to implement the functional, result-based steps. The Asserted Patents are therefore patent-ineligible.

## II. THE ASSERTED PATENTS AND PROCEDURAL HISTORY

Never-Search asserted two families of patents against Google. The only patent from the first family is the '519 Patent, which lists Keith Kreft as the sole inventor, claims priority to July 2003, and purports to address problems with then-existing electronic mapping programs. The '519 Patent asserts that then-existing mapping programs did not provide "information beyond the name, address, and phone number" for the POIs they displayed, which made it difficult for users to make "informed decision[s]" about which POIs to visit. '519 Patent, 2:15–40. Accordingly, the patent seeks to provide "qualitative information" for POIs—the "types of information found in travel guides"—such as a business's hours. *Id.*, 5:25-28, 7:58-61. The patent explains that the limited information displayed by then-existing mapping programs is problematic when searching for golf courses, where "[k]nowing the type of course (e.g., public or private), the number of holes, the fees, the degree of difficulty, etc., is essential in deciding whether to play a particular course." *Id.*, 2:8–17. The patent purports to remedy this issue by enabling users to select between different "levels

of information" that may be provided for POIs (e.g., for a golf course, less detail could show just the address while more detail could include the type of course or fees). *Id.*, 2:35–40, 5:8-45, Cl. 1.

The remaining Asserted Patents—the '318, '330, '981, '479, '810, '910, and '903—all belong to the second patent family, claim priority to a provisional application filed in April 2004, also list Keith Kreft as the sole inventor, share a common specification, and similarly purport to improve a user's experience when using an electronic mapping system. The alleged improvements include, for example, making it "easy [and] convenient" for managers of POIs to correct inaccuracies in stored POI information, such as correcting wrong location information via clicking an icon for a POI location on a map or dragging and dropping a POI location marker to the correct location. '981 Patent, 5:4–26, 8:42-49, 17:66-18:6, 18:19-35. They also include enabling users to save sets of "favorite" POIs for quick display or for adjusting the level of detail displayed for all favorite POIs. *Id.*, 12:29–31, 14:10-18, 14:33-63. The specification further describes adapting the commercial practice of advertising in magazines and other publications to the electronic mapping context, such as by displaying advertising for POIs like retailers on a map. *See, e.g.*, *id.*, 9:56–10:5. The advertisements displayed may be based on the POIs a user has selected, such as displaying golf-oriented advertising when a user selects a golf course POI. *Id.*, 11:4-19.

While the Asserted Patents disclose features for electronic mapping programs, the specifications disclaim any new technology. For example, the '519 Patent explains its alleged invention can be practiced using conventional computer components, such as a computer with a processor, memory, and hard drive ('519 Patent, 8:6-10:5), and, instead of claiming specific components or a specific arrangement of components, the patent states that the claimed invention is "not limited to any specific combination of hardware circuitry or software" (*id.*, 8:52-54). Similarly, the remaining Asserted Patents explain that all of the "map data processing functions" described in the patents may be implemented using "a conventional Web browser" without describing any novel software algorithm. '981 Patent, 9:37-47.

Never-Search has also recently filed two other patent infringement cases before this Court. *See Never-Search, Inc. v. Apple, Inc.*, No. 3:24-cv-03945-RFL (asserting the same '519, '318, '330, '479, '810, and '903 Patents but not the '981 or '910 Patents); *Never-Search, Inc. v.*

*Microsoft Corp.*, No. 3:24-cv-03950-RFL (asserting the same ’519, ’318, ’981, ’330, and ’903 Patents but not the ’479, ’810, or ’910 Patents). Apple also filed a motion to dismiss all patents asserted against it. No. 3:24-cv-03945-RFL, Dkt. 32.

## III. LEGAL STANDARDS

Patent eligibility is a question of law, suitable for resolution at the pleading stage. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017). To assess whether a patent claims ineligible subject matter under § 101, courts apply the two-step test of *Alice Corp. Pty. Ltd. v. CLS Bank Int’l*, 573 U.S. 208 (2014). At step one, the court must determine whether the challenged claims are “directed to” patent-ineligible subject matter, such as an abstract idea. *Id*. at 217–18. This involves looking to the “focus” of the claims and their “character as a whole.” *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). If the claims are directed to an abstract idea, the court moves to step two, where it considers the elements of the claims individually and “as an ordered combination” to determine whether those elements “transform the nature of the claim” into a patent-eligible application. *Alice*, 573 U.S. at 219.

## IV. ALL CLAIMS ARE INVALID UNDER § 101

All Asserted Patents claim ideas involving actions performed on information—receiving, storing, updating, providing, and/or displaying information about POIs on a map. But information is intangible, and the Federal Circuit has repeatedly held that claims directed to “collecting,” “analyzing,” and “displaying” information are abstract. *Elec. Power*, 830 F.3d at 1353–54. The Federal Circuit has specifically held that performing such steps in the context of electronic mapping is abstract. *See, e.g.*, *Int’l Bus. Mach. Corp. v. Zillow Grp., Inc.*, *(“Zillow”)*, 50 F.4th 1371, 1378, 1380 (Fed. Cir. 2022) (finding claims directed to “presenting a map, having a user select a portion of that map, and then [updating] the map … to display a more limited data set to the user” patent-ineligible); *Move, Inc. v. Real Estate All. Ltd.*, 721 F. App’x 950, 954–55 (Fed. Cir. 2018) (finding claims directed to “displaying [real estate properties] on a digital map that can be manipulated by the user” patent-ineligible). Similarly here, all Asserted Patents are directed to manipulating and displaying information on electronic maps. And all invoke generic conventional computer technology for performing the claimed abstract idea, without identifying any inventive concept.

Moreover, the Complaint identifies no alleged technological improvement provided by the Asserted Patents; instead, the Complaint's discussion of the patents reinforces that they claim the patent-ineligible abstract idea of displaying or updating information about POIs on a map. *See, e.g.*, Dkt. 1 ¶¶ 13, 14. Having failed to plead any facts supporting a purported technological improvement, Never-Search may not avoid dismissal based on any alleged factual disputes on this issue. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020).

Where patent claims are "substantially similar and linked to the same abstract idea," the Federal Circuit has instructed that courts can analyze representative claims and that it is "unnecessary" to address every claim of the asserted patents separately. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290-91 (Fed. Cir. 2024) (noting further that "District courts have discretion to ***require*** parties litigating Section 101 motions to identify representative claims and to articulate why (or why not) claims are representative") (emphasis in original). Accordingly, this motion considers four groups of patents, discussed below, analyzing one representative claim from each group. *See, e.g.*, *e-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 581 (2020) ("[W]hen determining patent eligibility under § 101, the Court may view a single claim as representative of multiple patents where there are no appreciable effects on the patent eligibility analysis."). Never-Search used this approach in its Complaint, identifying one claim for each of the Asserted Patents as representative of its infringement allegations for that patent; Google uses those same asserted claims in its analysis below.

## A. <u>The Claims of the '981 and '910 Patents Are Not Patent-Eligible</u>

### 1. *Alice* Step One: The claims are directed to an abstract idea

The claims of the '981 and '910 Patents are directed to the abstract idea of tailoring advertisements based on a user's selection of POIs on a map. Claim 9 of the '981 Patent, which is representative,[2] recites "displaying a geographical map" that "includes a plurality of selectable"

[2] Claim 1 of the '981 Patent, its only other independent claim, is substantively identical to Claim 9, reciting "non-transitory storage media storing instructions" for carrying out the same steps, and the independent claims of the '910 Patent are similar, reciting the display of an "advertisement" or "qualitative information" together with displayed POIs ('910 Patent, Cls. 1, 8, 16). The dependent

POIs and "based on a selection of one of the [POIs], displaying" "a list of advertisements associated with" the POI. *See* Appx. A. For example, if a user selects a car dealer POI, advertisements from local vehicle manufacturers may be displayed. '981 Patent, 11:20-27. Displaying such targeted advertisements is an abstract idea. "The Supreme Court has held that 'fundamental ... practice[s] long prevalent' are abstract ideas," and displaying targeted advertisements is a "fundamental" and "long prevalent" practice. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016); *see also, e.g.*, *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 884, 887 (Fed. Cir. 2019) (explaining that "[t]he concept of tailoring advertisements based on user data" is an abstract idea that "dates back at least to local radio and television advertisements").

Indeed, targeted advertising using maps is a long-standing practice predating computers. For example, printed travel guides that identify the locations of restaurants, hotels, landmarks, or other POIs on maps routinely depict advertisements for those restaurants/POIs on the same or adjacent pages as the map. In fact, this comparison of the claimed invention to pre-computer paper maps is described in the common specification of the '981 and '910 Patents: it explains that print-based advertisements were well known, while adding that the "advertising component" of the disclosed invention is "similar to that found in periodicals" and differs simply in that "the advertising is in a mapping application program, rather than a magazine or other publication." '981 Patent, 9:56-61. In essence, the '981 and '910 Patents concede that they just put what was in a magazine on a computer, which is not patentable. *See, e.g.*, *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1362–65 (Fed. Cir. 2020) (finding claims directed to "using a computer to deliver targeted advertising to a user" abstract); *Chewy, Inc. v. IBM*, 94 F.4th 1354, 1366 (Fed. Cir. 2024) (finding claims directed to the "identifying advertisements based on search results" abstract).

**2. *Alice* Step Two: The claims have no inventive concept**

The claims of the '981 and '910 Patents are also patent-ineligible under *Alice*'s step two because they do not recite "significantly more than a patent upon the [abstract idea] itself." *See*

---

claims of the '981 and '910 Patents add "no appreciable effects on the patent eligibility analysis" (*see e-Numerate*, 149 Fed. Cl. at 581) but instead merely "tack on generic computer components ... or introduce conventional computer activities" (*see Mobile Acuity*, 110 F.4th at 1290-91).

573 U.S. at 218. Merely implementing an abstract idea "'on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way' do[es] not suffice at step two." *Zillow*, 50 F.4th at 1379. The claims here recite computer components—"computer display," "graphical display device," "non-transitory storage media storing instructions," "processors," and "Internet enabled geographical map"—that the common specification admits are conventional and generic. *See, e.g.*, '981 Patent, 27:34-38 ("The computing device ***may be any type.***"), 3:36-41 (Internet enabled geographical maps were well known). The claims do nothing more than use these generic computer technologies as tools to apply the practice of targeted advertising to the electronic mapping context. While claims "directed to a[] challenge[] unique to computer networks, or specific improvements to the functionality of the computer itself" may be patent-eligible, *Chewy*, 94 F.4th at 1365, the claims here provide no such inventive concept. Instead, the claims are analogous to those the Federal Circuit found patent-ineligible in *Chewy*, another case involving claims directed to targeted advertisements. There, the challenged claims recited a method for providing a user with advertisements related to the user's search results (analogous to the user-selected POIs here) and involved "displaying [the] related advertisements for each search result when selected by a user on [a] GUI." *Id.* The Federal Circuit held that the claims were directed to "the abstract idea of identifying advertisements based on search results" and emphasized that the claims were "not directed to any challenge unique to computer networks, or specific improvements to the functionality of the computer itself" and thus "at most" amounted to "an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool." *Id.* at 1366. Similar to *Chewy*, the claims of the '981 and '910 Patents are not directed to any challenge or improvements unique to computer technologies.

Further, none of the claims' limitations provides an inventive concept. For instance, while the '981 Patent recites the "selectable" nature of the POIs, "[m]erely requiring the selection … of information" does not transform otherwise-abstract claims into patent-eligible subject matter. *Zillow*, 50 F.4th at 1378. Likewise, the '910 Patent's recitation of "concurrently displaying" POIs and advertisements/information is not inventive, as the Federal Circuit has explained that "'displaying concurrent visualization of two or more types of information' [is] insufficient to confer

patent eligibility." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344–45 (Fed. Cir. 2018).

Finally, the ordered combination of limitations recited in the claims also fails to provide any inventive concept. Instead, the claims are organized to recite the performance of generic, conventional steps in an equally generic, conventional order—displaying a geographical map that includes POIs, and then, in response to a selection of a POI, displaying advertisements associated with the POI. Indeed, these steps are similar to the ordered combination of abstract steps at issue in *Zillow*—"presenting a map, having a user select a portion of that map, and then [updating] the map … to display a more limited data set to the user"—which the Federal Circuit found failed to provide any inventive concept. 50 F.4th at 1378, 1380.

### B. The Claims of the '519 Patent Are Not Patent-Eligible

#### 1. *Alice* Step One: The claims are directed to an abstract idea

The claims of the '519 Patent are directed to the abstract idea of enabling the selective display of different levels of information associated with POIs displayed on a map. Representative Claim 1[3] recites "displaying a geographical map" with POIs, as well as "an information box" for each POI, where a user can select between a "first control" for the display of "a higher level of information" and a "second control" for the display of "a lower level of information." *See* Appx. A. For example, the specification describes that a user may select a "Show Basic Info Only command," which causes the display of a POI's name, address, and phone number, or the user may select the "Show All Information command," which causes "all available data" for a POI to be displayed. '519 Patent, 5:29-45. For a winery, more detailed information may include whether wine tasting is available, hours of operations, and whether the winery charges for wine tasting, or, for a golf course, it may include user ratings, course designer, and number of holes. *Id.*, 5:8-28.

Selective display of different levels of information associated with POIs displayed on a map is an abstract idea. Indeed, the claimed steps are analogous to actions that could be performed using

[3] The remaining independent claims, Claims 17 and 18, are substantively identical to Claim 1, reciting a "computer-readable tangible storage medium comprising instructions" and an "apparatus," respectively, for performing the same steps. Similarly, the dependent claims add "no appreciable effects on the patent eligibility analysis" (*see e-Numerate*, 149 Fed. Cl. at 581) but instead merely "tack on generic computer components ... or introduce conventional computer activities" (*see Mobile Acuity*, 110 F.4th at 1290-91).

a paper map together with pens and translucent paper. As with the claimed steps, when looking at a paper map that includes symbols drawn on the map to identify POIs, the reader may select either a first or second piece of translucent paper to be placed over the map, where the first piece of translucent paper details basic information associated with each POI, such as address and phone number, and the second piece of translucent paper provides more details about each POI, such as hours of operation or user ratings. In *Zillow*, the Federal Circuit found similar layered map claims abstract, based on a similar analogy about using "pencils and translucent paper," reasoning that "[w]hile moving objects between layers or rearranging layers may take longer using the manual method, a patent that automates pen and paper methodologies to conserve human resources and minimize errors is a quintessential do it on a computer patent directed to an abstract idea." 50 F.4th at 1381–82 (citations and quotation marks omitted).

The abstract nature of the claims is further supported by their failure to offer any technological improvements, instead simply using a computer as a tool for performing the claimed abstract idea. The Federal Circuit has rejected similar claims directed to the "display" of information, including in response to user input, without reciting any technological improvements. *See, e.g.*, *id.* at 1378 (finding claims directed to "presenting a map, having a user select a portion of that map, and then synchronizing the map and [a] corresponding list to display a more limited data set to the user" were abstract, amounting to "mere automation of manual processes using generic computers," which "does not constitute a patentable improvement in computer technology"). Similarly, in *Move*, the Federal Circuit held that claims directed to "displaying [real estate properties] on a digital map that can be manipulated by the user" were abstract, as the claims, like those at issue here, merely provided that the claimed steps were to be performed using a "computer" but otherwise "contain[ed] no technical details or explanation of how to implement the abstract idea using the computer." 721 F. App'x at 954–55.

The functional, result-based language of the claims further highlights their abstract nature. Where, as here, "the claims are directed to certain functionality" (i.e., displaying information on a map) but "do not claim a particular way of programming or designing the software to [achieve that functionality]," they are abstract. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir.

2016). Tellingly, the ’519 Patent’s claims do not include any technical details describing how the “computer” implementing the claimed steps “display[s]” the claimed “geographical map,” the “icon identifying two or more” POIs, the “qualitative information associated with” the POI, or the “information box”; nor do the claims detail how the claimed first/second “control[,] when selected[,] causes displaying a [higher/lower] level of information.”

#### 2. *Alice* Step Two: The claims have no inventive concept

The claims of the ’519 Patent are also patent-ineligible under *Alice*’s step two. Apart from the abstract idea of displaying information on maps, the claims recite only conventional and generic computer components—a “computer,” “computer-readable tangible storage medium,” “processors,” and “datasets.” The specification confirms that these claimed components are conventional, explaining that “embodiments of the invention are not limited to any specific combination of hardware circuitry and software.” ’519 Patent, 8:52–54. And while the ’519 Patent is directed to the display of information, it is well established that merely reciting “display functions” using “a set of generic computer components and display devices” is insufficient to supply an inventive concept. *Elec. Power*, 830 F.3d at 1355.

Additionally, none of the user interface features in the claims provides an inventive concept. While the claims recite an “information box” and “control[s]” for causing different “level[s] of information” to be displayed in the information box, these features are all recited “at a high level of generality,” described merely in functional terms, and do not supply an inventive concept. *See, e.g.*, *Intellectual Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (“generic computer components … that merely describe the functions of the abstract idea itself, without particularity,” are insufficient at step two). These features simply “[o]ffer[] a user the ability to select information to be displayed,” which the Federal Circuit has explained “is one of the most basic functions of a computer” and is not even “arguably inventive.” *Id.*

### C. <u>The Claims of the ’318, ’330, ’479, and ’810 Patents Are Not Patent-Eligible</u>

#### 1. *Alice* Step One: The claims are directed to an abstract idea

The claims of the ’318, ’330, ’479, and ’810 Patents are all directed to the abstract idea of

updating stored POI information. Claim 1 of the '318 Patent, which is representative,[4] recites steps for updating the location of a POI: "storing, in a database" a POI "associated with a first location," "receiving … location data that indicates a second location" of the POI, and "updating, in the database, based on the second location, coordinate data associated with the first location" of the POI. *See* Appx. A. The common specification describes the alleged inventions as making it "easy" to correct POIs that are inaccurately mapped, for instance where an address has not yet been geocoded or where multiple POIs are located at the same address, such as at malls and airports. '318 Patent, 2:65-3:45, 5:7-13, 5:35-37.

Receiving, updating, and providing stored POI information is an abstract idea and a long-standing practice that predates computers. It is well known to periodically issue new editions of printed maps, in part to account for updates to stale or incorrect information that was included in previous versions. Updating and correcting stored information for POIs is analogous to the concept of correcting the location of a roof in an image, which has been found to be abstract. *Eagle View Techs., Inc. v. Roofr, Inc.*, 651 F. Supp. 3d 729, 736-38 (D. Del. 2023) (finding claims abstract that were directed to "displaying an image of a roof corresponding to a geographic location[,] allowing the user to select a roof at a different geographic position within that image, allowing the user to confirm that selection, and then providing an unspecified report for the selected roof").

Indeed, the claimed steps are analogous to actions that a person could perform without a computer, using only physical maps and push-pins. For example, the claimed steps could be performed by a general in a war, who uses a push-pin to mark the locations of a brigade on the map of a battlefield. Later, the brigade moves 20 miles east, so the general moves the push-pin from its current location on the map to the new location and memorizes the new location.

---

[4] Independent Claim 18 of the '318 Patent, the patent's only other independent claim, is substantively identical to Claim 1, reciting "computer-readable media storing instructions" for performing the same steps. The independent claims of the '330, '479, and '810 Patents are similarly directed to updating stored POI information and include minor variations directed to how updates are received or implemented, including by receiving the updates from a user moving icons on the map ('479 and '810 Patents), storing the updates ('479 and '810 Patents), and providing the updated data for display ('330, '479, and '810 Patents). The dependent claims add "no appreciable effects on the patent eligibility analysis" (*see e-Numerate*, 149 Fed. Cl. at 581) but instead merely "tack on generic computer components ... or introduce conventional computer activities" (*see Mobile Acuity*, 110 F.4th at 1290-91).

The common specification confirms the abstract nature of the claims as it frames the problem to be solved as improving a user's experience while using an electronic mapping system, not in terms of improving the computer technology enabling such a system. The specification complains of the "extra-ordinary amount of time" that users of then-existing mapping systems allegedly spent in "locating places" ('318 Patent, 1:26-27), asserting that "[n]one of the programs [] make it ***easy or convenient*** to correct [] records that were inaccurately mapped" (*id.*, 5:7-5:12, 5:35-37). But merely "improving a user's experience while using a computer application is not, without more, sufficient to render [] claims directed to an improvement in computer functionality" sufficient for a finding of patent eligibility. *Customedia*, 951 F.3d at 1365. For instance, in *Trinity Info Media, LLC v. Covalent, Inc.*, the Federal Circuit explained that "[t]he specifications frame the inventor's problem in terms of how to improve existing polling systems … not how to improve computer technology," which "confirm[ed] that the asserted claims [were] directed to an abstract idea that merely seeks to use computers as a tool, not an improvement in computer capabilities." 72 F.4th 1355, 1363 (Fed. Cir. 2023).

The abstract nature of the claims is also evident by their recitation of broad functionality—"storing," "receiving," "causing to be displayed," and "updating"—without claiming ***how*** those functions are accomplished. Indeed, the claims fail to recite any technical details describing how a POI is "stor[ed] in a database," how "map location information" is "receiv[ed]," how the "map location information" "caus[es]" "a portion of the … map" "to be displayed," how "location data that indicates a second location" is "specified" on the displayed map, how that "location data" is "receiv[ed]," or how "coordinate data associated with the first location" is "updat[ed] … based on the second location." Claims, such as these, "that merely describe[] an effect or result dissociated from any method by which [it] is accomplished" are generally "not directed to patent-eligible subject matter." *Ameranth*, 842 F.3d at 1244. Thus, courts have repeatedly found claims reciting identical or similar functional language abstract, including: "presenting," "sending," and "***receiving … updates***" (*Intellectual Ventures I, LLC v. Motorola Mobility LLC*, 81 F. Supp. 3d 356, 366 (D. Del. 2015); "transmitting, ***receiving***, copying, deleting, and ***storing*** data records" (*WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 371 (Fed. Cir. 2021)); and "***displaying***, ***receiving***, and

rearranging" (*Zillow*, 50 F.4th at 1381).

### 2. *Alice* Step Two: The claims have no inventive concept

The claims are also patent-ineligible under *Alice*'s step two because they recite only generic computer components—a "database," "computer display," "computer," "computer-readable media," "processors," "the Internet," "map display programs," "computing devices," "programmed computers," and "a graphical display device." The specification confirms that all computer-related aspects were conventional and well known: "The computing device ***may be any type***" ('318 Patent, 27:14-21); "Internet enabled geographical map[s]" were well known (*id.*, 3:29-34); moving POI markers may be performed "using ***commonly available*** map navigation controls" (*id.*, 17:58-61); and "database[s]" for storing addresses were well known (*id.*, 2:24-46). *Elec. Power*, 830 F.3d at 1355 (holding that the invocation of "off-the-shelf, conventional computer, network, and display technology" is "not even arguably inventive"). Indeed, the specification's explanation that the alleged invention can be practiced using "a conventional Web browser" and "any type" of computing device confirms that the claims merely invoke computers as tools and do not address any challenge or improvement unique to computer technology. *See Chewy*, 94 F.4th at 1365. And the recited generic computer components simply perform their well-known functions. *See Content Extraction*, 776 F.3d at 1347-48; *see also Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) (finding that "selecting and moving an icon [on a display] is well-understood, routine, conventional activity").

Finally, the ordered combination of limitations also fails to provide an inventive concept as the claims recite the performance of conventional steps in an equally conventional order—storing a first location for a POI, receiving information that indicates a second location for the POI, and, in response, updating the POI's location. The claims' arrangement merely tracks the necessary steps for performing the abstract idea, which does not confer eligibility. *See Alice*, 573 U.S. at 225-26.

## D. <u>The Claims of the '903 Patent Are Not Patent-Eligible</u>

### 1. *Alice* Step One: The claims are directed to an abstract idea

The claims of the '903 Patent are all directed to the abstract idea of storing personalized lists of POIs and importing and displaying information associated with those POIs. Claim 1, which

is representative,[5] recites "stor[ing] personalized" POIs, "import[ing] an … address," "display[ing] said personalized" POIs and "said imported address" "on [a] map," and "allow[ing] … users to select one of a plurality of levels of detail for displaying qualitative information related to" the POIs. *See* Appx. A. The specification describes that "[s]ome map programs allow sets of data with addresses to be imported and mapped," which "allows a frequent traveler to create sets of POIs for favorite chains of restaurants or coffee houses, for example." '903 Patent, 5:24-35. For instance, a user may select the "Mark As Favorite command" to indicate that a POI is preferred. *Id.*, 14:33-63. This "allows the user to quickly display, or change the information display level of, all of the POI's which had previously been marked as interesting, without having to look for them." *Id.*

The '903 Patent acknowledges that it was well known to "import[] and map[]" "sets of data with addresses," such that a user may "create sets" of "favorite" POIs. *Id.*, 5:24-35. In fact, the '903 Patent explicitly acknowledges that "[t]he methods of exporting and importing of data between software applications is well known by those in the industry." *Id.*, 28:62-65. Courts have found that storing personalized lists, importing relevant information, and displaying the stored information are functions that "can be performed in the human mind or using a pencil and paper," and are thus abstract. *See, e.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021). For instance, the "storing," "importing," and "displaying" limitations are analogous to an individual storing a list of his favorite restaurants in his mind, writing down the list of favorite restaurants and their addresses, and then drawing a map of the locations of those restaurants. The limitation of "allow[ing] … users to select [a] level[] of detail for displaying … information related to the points of interest" is analogous to the individual choosing whether to see only the name, address, and phone number for the favorite POIs or to also see their hours of operation and user ratings. Or, more generally, the abstract idea is analogous to a user circling his favorite destinations on a map. Indeed, "with the exception of generic computer-implemented steps, there is nothing in

[5] Claims 9, 17, and 22, the remaining independent claims, are substantively similar, reciting the same abstract idea of storing personalized lists of POIs and displaying information for those POIs, but differ in specifics regarding types of POIs stored in the lists and types of information displayed. These additional limitations, along with those found in the dependent claims, while "add[ing] a degree of particularity," do not alter the fact that "the concept embodied by the majority of the limitations" of the claims involves the same abstract idea of storing personalized lists of POIs and associated information. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

the claims themselves that foreclose them from being performed by a human" without a computer, "demonstrat[ing] that the concept is well-known and abstract." *Symantec*, 838 F.3d at 1316-18.

Furthermore, the abstract nature of the claims is highlighted by the fact that they do not address any challenge or improvement unique to computer technology. *See Chewy*, 94 F.4th at 1365. Instead, the '903 Patent purports to address the problem of saving time when searching for POIs and related information on a map (*see, e.g.*, '903 Patent, 1:45-2:2)—a problem not unique to computer technology. Atlases have long provided information associated with POIs on a map. *See Peschke Map Techs. LLC v. Rouse Props. Inc.*, 168 F. Supp. 3d 881, 887-88 (E.D. Va. 2016) (explaining that maps and atlases have long allowed people to search for locations and related information); *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103, 112 (D.D.C. 2015) ("Atlases … provide indexes that allow a person to choose a place and then locate either a map showing the location of that place or textual information about that place.").

Moreover, while the claims of the '903 Patent recite the use of a GUI, they are not directed to any improvement in GUI technology, reciting instead a generic "graphical user interface (GUI) provided by an internet browser or a mapping application." *See* '903 Patent, Cl. 1. Thus, the claimed GUI "is described without specificity at a generic level" and thus is not a technological improvement. *GREE, Inc. v. Supercell Oy*, 855 F. App'x 740, 743 (Fed. Cir. 2021). Similarly, while independent Claims 9, 17, and 22 recite "display[ing] website addresses" within the GUI, which enable the device to "connect" to a website, the specification admits that this functionality was well known, not a technological improvement. *See, e.g.*, '903 Patent, 11:27-32. The idea is similar to including "a pointer [(e.g., webpage URL)] to pre-stored data [(e.g., webpage)]" in an electronic message, which this District found abstract in *Windy City Innovations, LLC v. Facebook, Inc.* 411 F. Supp. 3d 886, 897 (N.D. Cal. 2019), *aff'd*, 835 F. App'x 610 (Fed. Cir. 2021).

Further confirming their abstract nature, the claims recite various operations—"creat[ing]," "stor[ing]," "display[ing]," "import[ing]"—using only functional, result-based language. They do not explain how the claimed "creat[ing]," "stor[ing]," "display[ing]," and "import[ing]" tasks are accomplished. Nor do the claims describe how "an account" is "creat[ed]"; how "personalized" POIs are "selected," "store[d]," and "display[ed]"; how an "address" is "imported," "display[ed],"

and "stor[ed]"; or how a user may "select [a] level[] of detail for displaying qualitative information." *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020) ("[T]he claim itself ... must go beyond stating a functional result; it must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness."); *see also Zillow*, 50 F.4th at 1381 (finding claims abstract because they "provide[] only a result-oriented solution, with insufficient detail for how a computer accomplishes it").

### 2. *Alice* Step Two: The claims have no inventive concept

The claims of the '903 Patent are also patent-ineligible under *Alice*'s step two because they recite only conventional and generic components for carrying out the abstract idea—"a mapping system," "computing devices," "Internet," "at least one server," "customer relationship management (CRM) application," "graphical user interface," "internet browser," "mapping application," "one or more databases," "website addresses," and "a memory." The specification confirms the conventionality of these components, explaining that "Internet mapping services, like MapQuest or Yahoo! Maps," as well as "PC-based travel map programs, like Microsoft's Streets and Trips," were well known ('903 Patent, 3:53-58), as were "database[s]" for storing addresses (*id.*, 2:37-61) and "customer relationship management (CRM)" programs (*id.*, 5:47-50).

Similarly, neither the specific limitations within the claims nor their ordered combination provides an inventive concept. While Claim 1 recites "allow[ing] … users to select one of a plurality of levels of detail for displaying qualitative information related to" the POIs, these user interface features are all recited "at a high level of generality," described in functional, rather than structural, terms and thus do not supply an inventive concept. *See, e.g.*, *Cap. One Fin.*, 850 F.3d at 1341. Instead, these features simply "[o]ffer[] a user the ability to select information to be displayed," which the Federal Circuit has explained "is one of the 'most basic functions of a computer'" and is not even "arguably inventive." *Id.* Similarly, the claims are organized to recite the performance of conventional steps in an equally conventional order—the claims' arrangement merely tracks the necessary steps for performing the abstract idea, which does not confer eligibility.

## V. <u>CONCLUSION</u>

For the foregoing reasons, all asserted claims are patent-ineligible under § 101.

Dated: September 23, 2024

Respectfully submitted,

By: /s/ *David S. Almeling*
David S. Almeling

DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
LUANN L. SIMMONS (S.B. #203526)
lsimmons@omm.com
DAVID S. ALMELING (S.B. #235449)
dalmeling@omm.com
MARK LIANG (S.B. #278487)
mliang@omm.com
BILL TRAC (S.B. #281437)
btrac@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: +1 415 984 8700

LAURA GORE (*pro hac vice forthcoming*)
lgore@omm.com
AMY ZHAO (*pro hac vice forthcoming*)
amyzhao@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, 17th Floor
New York, New York 10019
Telephone: +1 212 326 2000

FRANCES MACKAY (*pro hac vice forthcoming*)
fmackay@omm.com
**O'MELVENY & MYERS LLP**
2501 North Harwood Street, Suite 1700
Dallas, TX 75201-1663
Telephone: +1 972 360 1900

KELVIN HAN (S.B. #334912) (*admission forthcoming*)
kelvinhan@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, CA 90071-2899
Telephone: 213-430-6000

*Attorneys for Defendant Google LLC*